## GRAUSTEIN v. RUTLAND R. CO.

(District Court, D. Massachusetts. March 4, 1919.)

### No. 914.

1. COURTS ☞274—JURISDICTION OF FEDERAL COURTS—DISTRICT OF SUIT—"DOING BUSINESS"—"PRESENT IN STATE."

   A foreign railroad company, having no line of road in Massachusetts, but maintaining an office in Boston and an agent authorized only to solicit business and take orders for tickets, which he obtained from a tourist agent supplied with tickets by such company and others, *held* not doing business or present in the state, so as to be subject to suit there under Judicial Code, § 51 (Comp. St. § 1033).

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Doing Business.]

2. COMMERCE ☞92—SUIT TO ENFORCE ORDERS OF INTERSTATE COMMERCE COMMISSION—JURISDICTION.

   Interstate Commerce Act Feb. 4, 1887, § 16, as amended by Act June 18, 1910, § 13 (Comp. St. § 8584), providing for suits against railroad companies to enforce orders of the Interstate Commerce Commission in the district in which the complainant resides, does not authorize service of process beyond such district.

At Law. Action by Ida S. Graustein against the Rutland Railroad Company. On plea in abatement. Plea sustained, and action dismissed.

William H. Garland, of Boston, Mass., and William A. Graustein, of East Cambridge, Mass., for plaintiff.

Ralph A. Stewart, Choate, Hall & Stewart, and Walter A. Dane, all of Boston, Mass., for defendant (specially).

MORTON, District Judge. This plea in abatement raises the questions (1) whether the defendant is within the jurisdiction of the court and subject to suit here; and (2) if not, whether service on it in Vermont was good. The facts are as follows:

[1] The defendant is a Vermont corporation. Its principal place

of business is in that state. It neither owns nor operates any railroad within this district. The process issued against it in the present suit was served in Boston, upon one Burrell, and upon one Marsters, each of whom is said in the marshal's return of service to have been an agent of the defendant. Burrell was employed by the defendant on a salary. His office was a room in the Old South Building on Washington street. On the door of this room was a sign giving his name, with the addition "General Agent Rutland Railroad." He kept there and used with the defendant's assent stationery marked "Rutland Railroad." The rent of the room was paid by the defendant. None of its tickets were kept there. Burrell's duties were to solicit business for it, and to take orders for tickets which he obtained from other persons, usually from Marsters. On the folder time-tables issued by the defendant, Burrell's name appears in a list of ticket agents through New England. Burrell occasionally discussed the adjustment of claims; but it does not appear that he ever decided any question of that sort, or had any authority to act for the defendant, except in the solicitation of business and the procuring of tickets in the manner stated.

Marsters was a "tourist agent," whose office was at 248 Washington street. He represented various railroads, among them the defendant. He was supplied by it with a small stock of local tickets, issued by it for passage over its lines outside of Massachusetts, which he was authorized to sell on its account. When a prospective passenger desired a ticket from Boston to a point on the Rutland Railroad, Marsters obtained it from the Boston & Maine Railroad, which issued to him the tickets over the Rutland Railroad as agent for the Rutland. Marsters, in what he did for the defendant, acted under the supervision of its general passenger agent. No part of his office rent or expenses were paid by it. It does not appear whether Marsters worked on a commission or on a salary.

I am unable to distinguish this case from Green v. C., B. & Q. R. Co., 205 U. S. 530, 27 Sup. Ct. 595, 51 L. Ed. 916, as the facts in the Green Case are stated by McPherson, J., in Goepfert v. Compagnie Gen. Transatlantique (C. C.) 156 Fed. 196, at page 198. As I am bound by the Green decision, I rule that the defendant was not so present or represented within this district as to be subject to suit here under section 51 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1101 [Comp. St. § 1033]). See, too, Davis v. B. & O. R. R. (D. C. Feb. 11, 1919), 256 Fed. 407.

[2] It follows that the case must be dismissed unless jurisdiction is specially conferred by Interstate Commerce Act Feb. 4, 1887, c. 104, § 16, 24 Stat. 384, as amended by Act June 18, 1910, c. 309, § 13, 36 Stat. 554 (U. S. Compiled Stats. § 8584), which reads as follows:

"If a carrier does not comply with an order for the payment of money within the time limit in such order, the complainant, or any person for whose benefit such order was made, may file in the [Circuit Court] of the United States for the district in which he resides or in which is located the principal operating office of the carrier, or through which the road of the carrier runs, or in any state court of general jurisdiction having jurisdiction of the parties, a petition setting forth briefly the causes for which he claims damages, and the order of the commission in the premises. Such suit in the [Circuit Court]

(256 F.)

of the United States shall proceed in all respects like other civil suits for damages."

"To obtain jurisdiction there must be service." Moody, J., Green v. C., B. & Q. R. Co., supra. In addition to the service on Burrell and Marsters, above described, copies of the order of this court for the defendant to appear and answer in this suit were served on the defendant's principal officers at Rutland, in the state of Vermont, where its principal office is located. Is such service good?

It is, of course, within the power of Congress to provide that process from a federal court may run and be served anywhere in the United States. Such jurisdiction, being of exceptional character, ought not to be assumed by a court without clear statutory authority therefor. So far as I am aware, in every case in which the process of a District Court runs beyond its own district, there is explicit provision to that effect, which is lacking in the section under discussion. This absence is highly significant in view of related statutory provisions. In the analogous matter of suits to enforce certain orders of the Interstate Commerce Commission (see U. S. Compiled Stats. §§ 993, 994), it is specially provided that—

"The orders, writs and processes of the District Courts may in these cases run, be served, and be returnable anywhere in the United States." U. S. Comp. St. § 995.

This provision applies to a section beginning, "The venue of any suit hereafter brought to enforce * * * any order of the Interstate Commerce Commission shall be in the judicial district wherein is the residence of the party or any of the parties upon whose petition the order was made" (U. S. Comp. St. § 994), which is fully as strong for the plaintiff as the provision in section 8584 on which she now relies, viz., that "the complainant * * * may file in the * * * district in which he resides," etc. Again, in the section of the Interstate Commerce Act relating to joining two or more defendants in cases to enforce orders of the Commission—this is a case against a single defendant—it is provided:

"Service of process against any one of such defendants as may not be found in the district where the suit is brought may be made in any district where such defendant carrier has its principal operating office." U. S. Comp. St. § 8584, cl. 3.

The language of section 8584 is substantially equivalent to that of section 51 of the Judicial Code, viz., that "suit shall be brought only in the district of either the plaintiff or the defendant," under which it is settled that the plaintiff cannot sue in his own district unless he can get service on the defendant there. In re Keasbey & Mattison Co., 160 U. S. 221, 16 Sup. Ct. 273, 40 L. Ed. 402.

I therefore reach the conclusion that section 8584 does not authorize process to be served beyond the district in which the suit is filed.

Plea in abatement adjudged good; action dismissed.